# EXHIBIT A



RULES OF
# Elected Officials
## Division 30—Secretary of State
## Chapter 51—Broker-Dealers, Agents, Investment Advisers, and Investment Adviser Representatives

**Exhibit Sticker**

**Exhibit A**

| Title | Page |
|---|---|
| 15 CSR 30-51.010 | General Instructions ................................................ 3 |
| 15 CSR 30-51.020 | Applications for Registration or Notice Filings ....................... 3 |
| 15 CSR 30-51.030 | Examination Requirement ........................................... 4 |
| 15 CSR 30-51.040 | Financial Statements ............................................... 5 |
| 15 CSR 30-51.050 | Net Capital Requirements for Broker-Dealers ....................... 5 |
| 15 CSR 30-51.060 | Broker-Dealer Notice of Net Capital Deficiency ...................... 6 |
| 15 CSR 30-51.070 | Minimum Net Worth Requirements for Investment Advisers ........... 6 |
| 15 CSR 30-51.075 | Trusted Contact Requirements for Investment Advisers ............... 6 |
| 15 CSR 30-51.080 | Bonds (Rescinded February 12, 1987) ............................... 6 |
| 15 CSR 30-51.090 | Segregation of Accounts by Broker-Dealers ......................... 7 |
| 15 CSR 30-51.100 | Custody of Securities or Funds by Investment Advisers ............... 7 |
| 15 CSR 30-51.110 | Confirmations ..................................................... 7 |
| 15 CSR 30-51.120 | Records Required of Broker-Dealers ................................ 8 |
| 15 CSR 30-51.130 | Records To Be Preserved by Broker-Dealers (Rescinded January 30, 2020) ........................................ 8 |
| 15 CSR 30-51.140 | Records Required of and To Be Preserved by Investment Advisers ....... 8 |
| 15 CSR 30-51.145 | Compensation Arrangements Involving Investment Advisers .......... 10 |
| 15 CSR 30-51.150 | Records to be Preserved by Investment Advisers (Rescinded February 29, 2004) ..................................... 10 |
| 15 CSR 30-51.160 | Effectiveness and Post-Effective Requirements ....................... 10 |
| 15 CSR 30-51.165 | Networking Arrangements Between Broker-Dealers and Banks, Trust Companies or Savings Institutions ........................... 12 |



15 CSR 30-51.169    Fraudulent Practices of Broker-Dealers and Agents...................13

15 CSR 30-51.170    Dishonest or Unethical Business Practices by Broker-Dealers and Agents.........................................................14

15 CSR 30-51.171    Supervision Guidelines for Broker-Dealers...........................17

15 CSR 30-51.172    Dishonest or Unethical Business Practices by Investment Advisers and Investment Adviser Representatives ...........................17

15 CSR 30-51.173    Supervision Guidelines for Investment Advisers......................20

15 CSR 30-51.175    Exclusion From Definition of Broker-Dealer .........................20

15 CSR 30-51.180    Exemptions from Registration for Broker-Dealers, Agents, Investment Advisers, and Investment Adviser Representatives........21

CODE OF STATE REGULATIONS
JOHN R. ASHCROFT (6/30/23)
Secretary of State



### TITLE 15 – ELECTED OFFICIALS
### Division 30 – Secretary of State
### Chapter 51 – Broker-Dealers, Agents, Investment Advisers, and Investment Adviser Representatives

**15 CSR 30-51.010 General Instructions**

*PURPOSE: This rule covers general instructions applicable to persons applying for registration as broker-dealer, agent, investment adviser, or investment adviser representative.*

(1) Qualifications for Registration. A broker-dealer, agent, investment adviser, investment adviser representative, or issuer agent may be registered or renewed under the Act if the commissioner finds that the applicant:
(A) Is qualified;
(B) Has sufficient training, knowledge and experience in the securities business;
(C) Is of good repute and has otherwise satisfied the requirements of the Act and these rules; and
(D) Has attained the age of eighteen (18) years, if the applicant is an individual.

(2) Registered Person Requirement. A broker-dealer shall have at least one (1) agent registered in this state. An investment adviser shall have at least one (1) investment adviser representative registered in this state.

(3) Dual Registration of Agents and/or Investment Adviser Representatives. Any applicant for registration as agent or investment adviser representative shall not be registered as representing more than one (1) broker-dealer, issuer or investment adviser at any one (1) time, except as follows:
(A) Where control and management of the broker-dealers, issuers or investment advisers are essentially identical; or
(B) Where both broker-dealer(s), issuer(s) and/or investment adviser(s) have filed a statement signed by a principal of each firm:
1. Acknowledging the proposed dual agency;
2. Affirming that there will be no conflict of interest; and
3. Assuring the commissioner that the dual agency will be disclosed to all prospective customers.

(4) Broker-Dealer with Investment Adviser or Federal Covered Adviser Capacity. A broker-dealer, that is not also registered as an investment adviser or filed as a federal covered adviser, is not qualified to employ or supervise investment adviser representatives unless the broker-dealer has filed a Form ADV with its initial or renewal registration as required in 15 CSR 30-51.020(1)(C).

*AUTHORITY: sections 409.4-402(e), 409.4-406(e) and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Emergency amendment filed Aug. 15, 1983, effective Aug. 29, 1983, expired Dec. 26, 1983. Amended: Filed Aug. 15, 1983, effective Nov. 11, 1983. Emergency amendment filed Aug. 4, 1995, effective Aug. 14, 1995, expired Dec. 11, 1995. Amended: Filed Aug. 4, 1995, effective Jan. 30, 1996. Amended: Filed Dec. 17, 2001, effective July 30, 2002. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.4-402, RSMo 2003; 409.4-406, RSMo 2003; 409.6-605, RSMo 2003.*

**15 CSR 30-51.020 Applications for Registration or Notice Filings**

*PURPOSE: This rule prescribes the information to be contained in, and the documents to accompany applications for registration as broker-dealer, broker-dealer agent, issuer agent, investment adviser, and investment adviser representative, and the notice filing requirement for federal covered investment advisers.*

(1) Broker-Dealer Application. The application for registration as broker-dealer shall contain the information outlined in section 409.4-406(a) of the Act and in this rule. Financial Industry Regulatory Authority (FINRA) members must file applications in accordance with the guidelines of the Central Registration Depository (CRD) System.
(A) Initial Registration. The following shall be included in an initial application for registration:
1. Form BD;
2. Form SBD-1, the Broker-Dealer Affidavit;
3. If a FINRA member, the most recent audited financial statements or Form X-17A-5 FOCUS Report;
4. If not a FINRA member, the most recent certified financial statements;
5. Designation of at least one (1) broker-dealer agent to be registered in Missouri; and
6. Payment of the filing fee.
(B) Renewal Registration. The following shall be submitted in a renewal application:
1. If a FINRA member, broker-dealer must submit payment of the filing fee;
2. If not a FINRA member, broker-dealer must submit –
A. The execution page of the Form BD;
B. Any amendments to the Form BD not previously filed;
C. A balance sheet prepared within ninety (90) days of filing;
D. A listing of agents representing the broker-dealer; and
E. Payment of the filing fee.
(C) Broker-Dealers with Investment Adviser or Federal Covered Adviser Capacity. A broker-dealer, that intends to employ or supervise investment adviser representatives, but which is not also registered as an investment adviser or filed as a federal covered adviser, shall file a Form ADV with its initial or renewal application for registration as required above. Broker-dealers have a continuing duty to amend this information under 15 CSR 30-51.160.

(2) Broker-Dealer Agent and Issuer Agent Application. The application for registration as a broker-dealer agent or issuer agent shall contain the information outlined in section 409.4-406(a) of the Act and in this rule. FINRA members must file applications in accordance with the guidelines of the CRD System.
(A) Initial Registration. The following shall be included in an initial application for registration:
1. Form U-4;
2. Payment of the filing fee; and
3. Documentation of qualification under examination requirements.
(B) Renewal registration of broker-dealer agents and issuer agents. The following shall be submitted in a renewal registration:


1. Payment of the filing fee; and
2. If not an agent of a FINRA member, Form SA-1, the Missouri Application for Renewal Registration as Agent.

(3) Investment Adviser Application. The application for registration as an investment adviser shall contain the information outlined in section 409.4-406(a) of the Act and in this rule. All applicants must file applications in accordance with the guidelines of the Investment Adviser Registration Depository (IARD) System, unless the commissioner has granted a hardship exemption under section (6).
　(A) Initial Registration. The following shall be included in an initial application for registration:
　　1. Electronically-filed Form ADV;
　　2. Form SADV-1, the State Covered Investment Adviser Affidavit and requested information;
　　3. Applicant's current balance sheet prepared within thirty (30) days of filing;
　　4. A listing of all investment adviser representatives who will be rendering investment advice for the firm in this state;
　　5. The name of the applicant's chief compliance officer;
　　6. Copies of the following documents:
　　　A. A sample or copy of the written agreement the applicant intends to enter into with any client relating to the business of the applicant;
　　　B. A sample or copy of any solicitor agreements the applicant intends to utilize if the applicant intends to use a solicitor(s) arrangement or act as a solicitor; and
　　　C. Private placement memorandum(s), limited partnership agreement(s), subscription agreement(s), and gatekeeper arrangement(s) if a pooled investment vehicle or hedge fund is to be involved, or any agreements similar to the above, if the applicant intends to utilize any of the above agreements; and
　　7. Payment of the filing fee.
　(B) Renewal Registration. The following shall be submitted in a renewal registration:
　　1. Payment of the filing fee.

(4) Federal Covered Adviser Notice Filing. The notice filing of a federal covered adviser transacting business in this state shall be filed in accordance with the guidelines of the IARD System and include the following:
　(A) Initial Notice Filing. The following shall be submitted in an initial notice filing:
　　1. Form ADV; and
　　2. Payment of filing fee.
　(B) Renewal Notice Filing. The following shall be submitted in a renewal notice filing:
　　1. Payment of filing fee.

(5) Investment Adviser Representative Application. The application for registration as an investment adviser representative shall contain the information outlined in section 409.4-406(a), RSMo and in this rule. All applicants must file applications in accordance with the guidelines of the CRD System, unless the commissioner has granted a hardship exemption under section (6).
　(A) Initial Registration. The following shall be included in an initial application for registration:
　　1. Form U-4;
　　2. Documentation of qualification under examination requirements; and
　　3. Payment of filing fee.
　(B) Renewal Registration. The following shall be submitted in a renewal registration:

1. Payment of filing fee.

(6) Hardship Exemption for Investment Advisers and Investment Adviser Representatives from IARD System and CRD System.
　(A) An investment adviser or investment adviser representative may request a hardship exemption from applying for registration in electronic format through the IARD System or CRD System by filing with the commissioner:
　　1. Form SADV-SH;
　　2. Payment of one hundred dollars ($100) filing fee.
　(B) The commissioner may grant a hardship exemption if filing an application in electronic format would subject the applicant to unreasonable burden or expense.

(7) Amendments to Application. Any amendment of an application pursuant to section 409.4-406(b), RSMo and 15 CSR 30-51.160(3) shall be filed with the appropriate form marked AMENDED.

*AUTHORITY: sections 409.4-406 and 409.6-605, RSMo 2016.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Dec. 19, 1975, effective Dec. 31, 1975. Amended: Filed Aug. 11, 1978, effective Feb. 11, 1979. Emergency amendment filed Aug. 15, 1983, effective Aug. 29, 1983, expired Dec. 26, 1983. Amended: Filed Aug. 15, 1983, effective Nov. 11, 1983. Amended: Filed Oct. 16, 1986, effective Feb. 12, 1987. Amended: Filed March 27, 1989, effective June 12, 1989. Amended: Filed July 3, 1989, effective Sept. 28, 1989. Emergency amendment filed Aug. 4, 1995, effective Aug. 14, 1995, expired Dec. 11, 1995. Amended: Filed Aug. 4, 1995, effective Jan. 30, 1996. Amended: Filed Feb. 27, 1996, effective Aug. 30, 1996. Rescinded and readopted: Filed Dec. 17, 2001, effective July 30, 2002. Amended: Filed Feb. 13, 2003, effective Aug. 30, 2003. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004. Amended: Filed Sept. 9, 2010, effective March 30, 2011. Amended: Filed July 19, 2019, effective Jan. 30, 2020.*

*\*Original authority: 409.4-406, RSMo 2003; 409.6-605, RSMo 2003.*

**15 CSR 30-51.030 Examination Requirement**

*PURPOSE: This rule prescribes the examination requirements of applicants for registration as broker-dealer, agent and investment adviser, and investment adviser representatives.*

(1) Every applicant for registration as a broker-dealer, agent, investment adviser, or investment adviser representative shall pass the written examinations required by the Financial Industry Regulatory Authority (FINRA) and this rule.

(2) The following examinations are required for the following applicants:
　(A) Broker-Dealer Agent Application. General agents of securities broker-dealers are required to take and pass—
　　1. The Securities Industry Essentials examination;
　　2. The Series 7 examination; and
　　3. Either Series 63 or the Series 66 examination.
　(B) Specialized Agent of a Broker-Dealer or Issuer Agent Application. Specialized agents of broker-dealers or issuers are required to take and pass—
　　1. The Securities Industry Essentials examination;
　　2. The applicable FINRA examination; and
　　3. Either the Series 63 or the Series 66 examination.

Case 2:23-cv-04154-SRB　　Document 21-1　　Filed 10/02/23　　Page 5 of 23



(C) Investment Adviser Representatives Application. Investment adviser representatives are required to take and pass—
    1. The Series 65 examination; or
    2. The Securities Industry Essentials, the Series 66, and the Series 7 examinations.

(3) Waiver of Examination Requirement for Broker-Dealer Agents. The commissioner may by order grant an agent registration to an applicant that has not complied with the examination requirements set forth in 15 CSR 30-51.030(2) if granting the registration is in the public interest and the applicant is able to demonstrate exceptional experience in and knowledge of the securities markets and applicable regulations, or the broker-dealer agent has taken and passed the previous equivalent of the required examination and has been previously registered as a broker-dealer agent with FINRA. For agents of FINRA members, unless a proceeding under section 409.4-412, RSMo, has been instituted, a waiver of the examination requirement by FINRA shall be deemed a waiver by the commissioner.

(4) Waiver of Examination Requirement for Investment Adviser Representatives. The examination requirement for applicants may be waived if the examination is not necessary for the protection of advisory clients. Applicants for Investment Adviser Representative may qualify for a waiver of the examination requirement in 15 CSR 30-51.030(2)(C)2., if the applicant currently holds one (1) of the following designations:
    (A) Certified Financial Planner (CFP) awarded by Certified Financial Planner Board of Standards, Inc.;
    (B) Chartered Financial Consultant (ChFC) awarded by the American College, Bryn Mawr, Pennsylvania;
    (C) Personal Financial Specialist (PFS) awarded by the American Institute of Certified Public Accountants;
    (D) Chartered Financial Analyst (CFA) awarded by the Institute of Chartered Financial Analysts;
    (E) Chartered Investment Counselor (CIC) awarded by the Investment Counsel Association of America, Inc.;
    (F) Certified Investment Management Consultant (CIMC) awarded by the Institute for Certified Investment Management Consultants;
    (G) Certified Investment Management Analyst (CIMA) awarded by the Investment Management Consultants Association; or
    (H) Such other professional designation as the commissioner may by order recognize.

*AUTHORITY: sections 409.4-412(a) and 409.6-605, RSMo 2016.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Dec. 19, 1975, effective Dec. 31, 1975. Emergency amendment filed Aug. 15, 1983, effective Aug. 29, 1983, expired Dec. 26, 1983. Amended: Filed Aug. 15, 1983, effective Nov. 11, 1983. Emergency amendment filed Aug. 1, 1984, effective Aug. 11, 1984, expired Nov. 11, 1984. Amended: Filed Aug. 1, 1984, effective Nov. 11, 1984. Amended: Filed July 3, 1989, effective Sept. 28, 1989. Emergency amendment filed Aug. 4, 1995, effective Aug. 14, 1995, expired Dec. 11, 1995. Amended: Filed Aug. 4, 1995, effective Jan. 30, 1996. Rescinded and readopted: Filed Dec. 17, 2001, effective July 30, 2002. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004. Amended: Filed May 21, 2009, effective Nov. 30, 2009. Amended: Filed Sept. 9, 2010, effective March 30, 2011. Amended: Filed April 12, 2018, effective*

*Sept. 30, 2018. Amended: Filed July 19, 2019, effective Jan. 30, 2020.*

*\*Original authority: 409.4-412, RSMo 2003 and 409.6-605, RSMo 2003.*

## 15 CSR 30-51.040 Financial Statements

*PURPOSE: This rule prescribes the content of financial statements filed by persons applying for registration and by persons registered as a broker-dealer or as an investment adviser.*

(1) A financial statement shall consist of a balance sheet, a profit and loss statement, statement of change in financial condition, certified unless otherwise prescribed hereinafter or permitted by the commissioner.

(2) Every applicant for initial registration as broker-dealer or investment adviser shall file a financial statement as follows:
    (A) As to initial registration as a broker-dealer, the applicant shall file a certified financial statement as of a date within thirty (30) days prior to the filing; provided if the applicant has been engaged in business one (1) year or more, s/he may file a certified financial statement as of the end of his/her last fiscal period together with a balance sheet, which need not be certified, as of a date within thirty (30) days prior to the filing. If the annual financial statement is more than six (6) months old, s/he also shall file a semi-annual financial statement, which need not be certified. The semi-annual financial statement may consist wholly of a completed FOCUS report for that period and a net capital computation (FOCUS Report, Form X-17A-5 (see 15 CSR 30-51.020)), as of the date of the balance sheet that accompany the financial statement; and
    (B) As to initial registration as an investment adviser, the applicant shall file a verified balance sheet current within thirty (30) days prior to filing.

*AUTHORITY: sections 409.4-411(b) and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Dec. 19, 1975, effective Dec. 31, 1975. Emergency amendment filed Aug. 11, 1978, effective Feb. 11, 1979. Emergency amendment filed Aug. 15, 1983, effective Aug. 29, 1983, expired Dec. 26, 1983. Amended: Filed Aug. 15, 1983, effective Nov. 11, 1983. Amended: Filed July 3, 1989, effective Sept. 28, 1989. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.4-411, RSMo 2003; 409.6-605, RSMo 2003.*

## 15 CSR 30-51.050 Net Capital Requirements for Broker-Dealers

*PURPOSE: This rule prescribes the minimum net capital and ratio between net capital and aggregate indebtedness required of registered broker-dealers.*

(1) A broker-dealer registered or required to be registered under the Missouri Securities Act of 2003 (the Act) shall maintain net capital requirements in accordance with rule 15c3-1 under the Securities Exchange Act of 1934.

(2) The commissioner, by order, which may apply individually



or to a class, may establish a lower net capital requirement, a lower cash reserve requirement, or a higher maximum ratio of aggregate indebtedness to net capital either unconditionally or upon special terms or conditions, for a broker-dealer who satisfies the commissioner that because of the special nature of his/her business and his/her financial condition and the safeguards that have been established for the protection of customers' funds, investors would not be adversely affected.

(3) A broker-dealer not in compliance with the aggregate indebtedness, net capital or cash reserve requirements shall cease soliciting new business and shall immediately notify the commissioner in writing.

(4) For the purposes of this rule and to insure uniform interpretation, the terms aggregate indebtedness and net capital shall have the respective meanings as defined in rule 15c3-1 under the Securities Exchange Act of 1934.

*AUTHORITY: sections 409.4-411(a) and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Dec. 19, 1975, effective Dec. 31, 1975. Amended: Filed Aug. 11, 1978, effective Feb. 11, 1979. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.4-411, RSMo 2003; 409.6-605, RSMo 2003.*

### 15 CSR 30-51.060 Broker-Dealer Notice of Net Capital Deficiency

*PURPOSE: This rule requires broker-dealers to furnish the commissioner notice of impending net capital deficiency, and announces the commissioner, once a year and without prior notice, may require all registered broker-dealers to furnish a net capital report.*

(1) Broker-dealers registered or required to be registered under the Missouri Securities Act of 2003 (the Act) whose net capital at any time is less than the minimum required by rule 15c3-1 under the Securities Exchange Act of 1934 shall give notice and file such reports with the commissioner as are required to be given and filed with the Securities and Exchange Commission (SEC) under rule 17a-11 of the Securities Exchange Act of 1934.

*AUTHORITY: sections 409.4-411(a) and (b), and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Aug. 11, 1978, effective Feb. 11, 1979. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.4-411, RSMo 2003; 409.6-605, RSMo 2003.*

### 15 CSR 30-51.070 Minimum Net Worth Requirements for Investment Advisers

*PURPOSE: This rule prescribes the minimum capital required of investment advisers.*

(1) Every investment adviser shall have and maintain net worth (assets minus liabilities), to include all cash, securities, and tangible assets of not less than five thousand dollars ($5,000) except as provided in section (2) of this rule.

(2) An investment adviser domiciled in another state must only comply with the net worth requirement of its home state.

*AUTHORITY: sections 409.4-411(a) and 409.6-605, RSMo 2016.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed July 3, 1989, effective Sept. 28, 1989. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004. Amended: Filed July 19, 2019, effective Jan. 30, 2020.*

*\*Original authority: 409.4-411, RSMo 2003; 409.6-605, RSMo 2003.*

### 15 CSR 30-51.075 Trusted Contact Requirements for Investment Advisers

*PURPOSE: This rule requires investment advisers to inform clients of their ability to provide a trusted contact and to maintain trusted contact information.*

(1) Every investment adviser, upon entering into a written agreement with a client, shall inform the client that they may provide trusted contact person information to the adviser. The adviser shall maintain this information with the written agreement.

(2) The client may provide the same trusted contact person information to the investment adviser as was provided to the custodian of any of the client's accounts in accordance with Financial Industry Regulatory Authority (FINRA) Rule 4512.06.

(3) The client may opt not to provide any trusted contact person information. If the client opts not to provide this information, the investment adviser shall maintain a record of this refusal along with or in the written agreement.

(4) The investment adviser or an associated investment adviser representative may contact the trusted contact person and may disclose information about the client's account to the trusted contact person in order to address potential exploitation of the client, the health or capacity of the client, or the identity of any family member, legal guardian, executor, trustee, or power of attorney of the client.

*AUTHORITY: section 409.600, RSMo 2016, and section 409.605, RSMo Supp. 2021.\* Original rule filed Nov. 1, 2021, effective April 30, 2022.*

*\*Original authority: 409.600, RSMo 2015, and 409.605, RSMo 2015, amended 2020.*

### 15 CSR 30-51.080 Bonds
(Rescinded February 12, 1987)

*AUTHORITY: sections 409.202 and 409.413(a), RSMo 1978. Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed*

Case 2:23-cv-04154-SRB   Document 21-1   Filed 10/02/23   Page 7 of 23



*May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Dec. 19, 1975, effective Dec. 31, 1975. Amended: Filed Aug. 11, 1978, effective Feb. 11, 1979. Emergency amendment filed Aug. 15, 1983, effective Aug. 29, 1983, expired Dec. 26, 1983. Amended Filed Aug. 15, 1983, effective Nov. 11, 1983. Rescinded: Filed Oct. 16, 1986, effective Feb. 12, 1987.*

### 15 CSR 30-51.090 Segregation of Accounts by Broker-Dealers

*PURPOSE: This rule prescribes the commingling by broker-dealers of their personal funds and securities with those of their customers and provides for the maintenance of separate records.*

(1) Every broker-dealer shall at all times keep its customers' funds and securities in trust and segregated from its own funds and securities; provided, however, that compliance with Securities and Exchange Commission rules governing the use, commingling and hypothecation of customers' securities and free credit balances shall be deemed compliance with this rule.

(2) Every broker-dealer which engages in more than one (1) enterprise or activity shall maintain separate books of accounts and records relating to its securities business and its other businesses and the assets relating to its securities business shall not be commingled with those of such other businesses. Every broker-dealer shall maintain a clearly defined division among those businesses with respect to income and expenses.

*AUTHORITY: sections 409.4-411(c) and (f), and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409-4-411, RSMo 2003; 409.6-605, RSMo 2003.*

### 15 CSR 30-51.100 Custody of Securities or Funds by Investment Advisers

*PURPOSE: This rule prohibits the custody of clients' securities or funds by registered investment advisers.*

*PUBLISHER'S NOTE: The secretary of state has determined that the publication of the entire text of the material which is incorporated by reference as a portion of this rule would be unduly cumbersome or expensive. This material as incorporated by reference in this rule shall be maintained by the agency at its headquarters and shall be made available to the public for inspection and copying at no more than the actual cost of reproduction. This note applies only to the reference material. The entire text of the rule is printed here.*

(1) Investment advisers may have custody or possession of the securities or funds of a client if —
  (A) The investment adviser maintains custody or possession in accordance with the requirements set forth in 17 CFR 275.206(4)-2; and
  (B) All items required to be filed with the U.S. Securities and Exchange Commission (SEC) under 17 CFR 275.206(4)-2 are filed, through the Investment Advisor Registration (IARD)

System, with the commissioner.

(2) The specific citation to 17 CFR 275.206(4)-2 referenced in this rule and published on January 11, 2010, shall apply and is hereby incorporated by reference as published by the Office of the Federal Register, U.S. National Archives and Records, 700 Pennsylvania Avenue NW, Washington, DC 20408. This rule does not incorporate any subsequent amendments or additions.

*AUTHORITY: sections 409.4-411(f) and 409.6-605, RSMo Supp. 2011.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004. Amended: Filed Sept. 1, 2005, effective Feb. 28, 2006. Amended: Filed May 1, 2012, effective Oct. 30, 2012.*

*\*Original authority: 409.4-411, RSMo 2003 and 409.6-603, RSMo 2003.*

### 15 CSR 30-51.110 Confirmations

*PURPOSE: This rule requires broker-dealers to confirm transactions in customers' securities.*

(1) Confirmations by broker-dealers of all purchases and sales of securities and notices of all other debits and credits for securities, cash and other items for the account of customers, officers, agents, partners and employees shall be given or sent to those persons at or before completion of each transaction, disclosing at least the following:
  (A) The account for which entered;
  (B) Instructions, terms and conditions, whether executed or unexecuted;
  (C) Date of execution of transaction. (Time of trade shall be furnished upon request.);
  (D) Whether the broker-dealer is acting for its own account, as agent for some other person, or as an agent for both customer and some other person;
  (E) If a broker-dealer is acting as agent for the customer, the following additional information or a statement that same will be furnished upon request:
    1. The name of the person from whom the security was purchased, or to whom it was sold, and date and time the transaction occurred;
    2. Source and amount of commission or remuneration received or to be received in connection with that transaction; and
  (F) Name or identification number of agent handling transaction.

*AUTHORITY: sections 409.4-411(c) and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.4-411, RSMo 2003; 409.6-605, RSMo 2003.*

Case 2:23-cv-04154-SRB   Document 21-1   Filed 10/02/23   Page 8 of 23



**15 CSR 30-51.120 Records Required of Broker-Dealers**

*PURPOSE: This rule prescribes the books and records required to be kept by broker-dealers that comply with the National Securities Markets Improvement Act of 1996 and the Missouri Securities Act of 2003 that became effective September 1, 2003.*

(1) Every broker-dealer registered or required to be registered under the Missouri Securities Act of 2003 shall make and maintain records as required for brokers or dealers under the rules promulgated under the Securities Exchange Act of 1934, as amended (17 CFR 240.17a-3 and 17 CFR 240.17a-4).

*AUTHORITY: sections 409.4-411(c) and 409.6-605, RSMo 2016.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Oct. 16, 1986, effective Feb. 12, 1987. Emergency rescission and rule filed Aug. 25, 2003, expired Sept. 12, 2003, expired March 9, 2004. Rescinded and readopted: Filed Aug. 25, 2003, effective Feb. 29, 2004. Amended: Filed July 19, 2019, effective Jan. 30, 2020.*

*\*Original authority: 409.4-411, RSMo 2003 and 409.6-605, RSMo 2003.*

**15 CSR 30-51.130 Records To Be Preserved by Broker-Dealers** (Rescinded January 30, 2020)

*AUTHORITY: sections 409.4-411(c) and 409.6-605, RSMo Supp. 2003. Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Emergency rescission and rule filed Aug. 26, 2003, effective Sept. 12, 2003, expired March 9, 2004. Rescinded and readopted: Filed Aug. 26, 2003, effective Feb. 29, 2004. Rescinded: Filed July 19, 2019, effective Jan. 30, 2020.*

**15 CSR 30-51.140 Records Required of and To Be Preserved by Investment Advisers**

*PURPOSE: This rule prescribes the books and records to be kept by investment advisers that comply with the Missouri Securities Act of 2003 that became effective September 1, 2003.*

(1) Every investment adviser registered or required to be registered under the Missouri Securities Act of 2003 shall make and keep true, accurate and current the following books and records relating to its investment advisory business:

(A) A journal or journals, including cash receipts and disbursements, records, and any other records of original entry forming the basis of entries in any ledger;

(B) General and auxiliary ledgers (or other comparable records) reflecting asset, liability, reserve, capital, income and expense accounts;

(C) A memorandum of each order given by the investment adviser for the purchase or sale of any security, of any instruction received by the investment adviser concerning the purchase, sale, receipt or delivery of a particular security, and of any modification or cancellation of any such order or instruction. Such memoranda shall show the terms and conditions of the order, instruction, modification or cancellation; shall identify the person connected with the investment adviser who recommended the transaction to the client and the person who placed such order; and shall show the account for which entered, the date of entry, and the bank, broker or dealer by or through whom executed where appropriate. Orders entered pursuant to the exercise of discretionary power shall be so designated;

(D) All checkbooks, bank statements, cancelled checks and cash reconciliations of the investment adviser;

(E) All bills or statements (or copies thereof), paid or unpaid, relating to the business of the investment adviser as such;

(F) All trial balances, financial statements, and internal audit working papers relating to the business of such investment adviser;

(G) Originals of all written communications received and copies of all written communications sent by such investment adviser relating to any recommendation made or proposed to be made and any advice given or proposed to be given, any receipt, disbursement or delivery of funds or securities, or the placing or execution of any order to purchase or sell any security. Provided, however, the investment adviser shall not be required to keep any unsolicited market letters and other similar communications of general public distribution not prepared by or for the investment adviser, and that if the investment adviser sends any notice, circular or other advertisement offering any report, analysis, publication or other investment advisory service to more than ten (10) persons, the investment adviser shall not be required to keep a record of the names and addresses of the persons to whom it was sent; except that if such notice, circular or advertisement is distributed to persons named on any list, the investment adviser shall retain with the copy of such notice, circular or advertisement a memorandum describing the list and the source thereof;

(H) A list or other record of all accounts in which the investment adviser is vested with any discretionary power with respect to the funds, securities or transactions of any client;

(I) All powers of attorney and other evidences of the granting of any discretionary authority by any client to the investment adviser, or copies thereof;

(J) All written agreements (or copies thereof) entered into by the investment adviser with any client or otherwise relating to the business of such investment adviser as such;

(K) A copy of each notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication that the investment adviser circulates or distributes, directly or indirectly, to ten (10) or more persons (other than persons connected with such investment adviser), and if such notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication recommends the purchase or sale of a specific security and does not state the reasons for such recommendation, a memorandum of the investment adviser indicating the reasons therefor;

(L) A copy of each written disclosure statement and each amendment or revision thereof, given or sent to any client or prospective client of such investment adviser, and a record of the dates that each written disclosure statement, and each amendment or revision thereof, was given, or offered to be given, to any client or prospective client who subsequently becomes a client;

(M) All written agreements or acknowledgments of receipt obtained from clients and copies of the disclosure documents delivered to clients by these solicitors pursuant to 15 CSR 30-51.145; and

(N) All accounts, books, internal working papers, and any other records or documents that are necessary to form the basis for or demonstrate the calculation of the performance or rate of return of any or all managed accounts or securities

Case 2:23-cv-04154-SRB   Document 121   Filed 06/02/23   Page 9 of 23



recommendations in any notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication that the investment adviser circulates or distributes, directly or indirectly, to ten (10) or more persons (other than persons connected with such investment adviser); provided, however, that, with respect to the performance of managed accounts, the retention of all account statements, if they reflect all debits, credits, and other transactions in a client's account for the period of the statement, and all worksheets necessary to demonstrate the calculation of the performance or rate of return of all managed accounts shall be deemed to satisfy the requirements of this subsection.

(2) If an investment adviser subject to section (1) of this rule has custody or possession of securities or funds of any client, the records required to be made and kept under section (1) of this rule shall include:
(A) A journal or other record showing all purchases, sales, receipts and deliveries of securities (including certificate numbers) for such accounts and all other debits and credits to such accounts;
(B) A separate ledger account for each such client showing all purchases, sales, receipts and deliveries of securities, the date and price of each purchase and sale, and all debits and credits;
(C) Copies of confirmations of all transactions effected by or for the account of any such client; and
(D) A record for each security in which any such client has a position, which record shall show the name of each such client having any interest in such security, the amount or interest of each such client, and the location of each such security.

(3) Every investment adviser subject to section (1) of this rule who renders any investment supervisory or management service to any client shall, with respect to the portfolio being supervised or managed and to the extent that the information is reasonably available to or obtainable by the investment adviser, make and keep true, accurate and current:
(A) Records showing separately for each such client the securities purchased and sold, and the date, amount and price of each such purchase and sale; and
(B) For each security in which any such client has a current position, information from which the investment adviser can promptly furnish the name of each such client, and the current amount or interest of such client.

(4) Any books or records required by this rule may be maintained by the investment adviser in such manner that the identity of any client to whom such investment adviser renders investment supervisory services is indicated by numerical or alphabetical code or some similar designation.

(5) All books and records required to be made under the provisions of sections (1) to subsection (3)(A), inclusive, of this rule (except for books and records required to be made under the provisions of subsections (1)(K) and (1)(N) of this rule), shall be maintained and preserved in an easily accessible place for a period of not less than five (5) years from the end of the fiscal year during which the last entry was made on such record, the first two (2) years in an appropriate office of the investment adviser.
(A) Partnership articles and any amendments thereto, articles of incorporation, charters, minute books, and stock certificate books of the investment adviser and of any predecessor, shall be maintained in the principal office of the investment adviser and preserved until at least three (3) years after termination of

the enterprise.
(B) Books and records required to be made under the provisions of subsections (1)(K) and (1)(N) of this rule shall be maintained and preserved in an easily accessible place for a period of not less than five (5) years, the first two (2) years in an appropriate office of the investment adviser, from the end of the fiscal year during which the investment adviser last published or otherwise disseminated, directly or indirectly, the notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication.

(6) An investment adviser subject to section (1) of this rule, before ceasing to conduct or discontinuing business as an investment adviser shall arrange for and be responsible for the preservation of the books and records required to be maintained and preserved under this rule for the remainder of the period specified in this rule, and shall notify the commissioner in writing, of the exact address where such books and records will be maintained during such period.

(7) Micrographic and Electronic Storage Permitted.
(A) General. The records required to be maintained and preserved pursuant to this part may be maintained and preserved for the required time by an investment adviser on:
1. Micrographic media, including microfilm, microfiche, or any similar medium; or
2. Electronic storage media, including any digital storage medium or system that meets the terms of this rule.
(B) General Requirements. The investment adviser must:
1. Arrange and index the records in a way that permits easy location, access, and retrieval of any particular record;
2. Provide promptly any of the following that the commissioner (by his examiners or other representatives) may request:
A. A legible, true, and complete copy of the record in the medium and format in which it is stored;
B. A legible, true, and complete printout of the record; and
C. Means to access, view, and print the records; and
D. Separately store, for the time required for preservation of the original record, a duplicate copy of the record on any medium allowed by this rule.
(C) Special requirements for electronic storage media. In the case of records on electronic storage media, the investment adviser must establish and maintain procedures:
1. To maintain and preserve the records, so as to reasonably safeguard them from loss, alteration, or destruction;
2. To limit access to the records to properly authorized personnel and the commissioner (including its examiners and other representatives); and
3. To reasonably ensure that any reproduction of a non-electronic original record on electronic storage media is complete, true, and legible when retrieved.

(8) Any book or other record made, kept, maintained and preserved in compliance with section 240.17a-3 and 240.17a-4 under the Securities Exchange Act of 1934, which is substantially the same as the book or other record required to be made, kept, maintained and preserved under this rule, shall be deemed to be made, kept, maintained and preserved in compliance with this rule.
(A) A record made and kept pursuant to any provision of section (1) of this rule, which contains all the information required under any other provision of section (1) of this rule, need not be maintained in duplicate in order to meet the



requirements of the other provision of section (1) of this rule.

(9) As used in this rule the term "discretionary power" shall not include discretion as to the price at which or the time when a transaction is or is to be effected, if, before the order is given by the investment adviser, the client has directed or approved the purchase or sale of a definite amount of the particular security.

*AUTHORITY: sections 409-4-411(c) and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Emergency rescission and rule filed Aug. 25, 2003, effective Sept. 12, 2003, expired March 9, 2004. Rescinded and readopted: Filed Aug. 25, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409-4-411, RSMo 2003, and 409.6-605, RSMo 2003.*

### 15 CSR 30-51.145 Compensation Arrangements Involving Investment Advisers

*PURPOSE: This rule permits compensation arrangements presently allowed by the United States Securities and Exchange Commission.*

(1) Registered investment advisers may pay a cash fee to a solicitor who refers business to the investment adviser (but does not render any investment advice) as long as the solicitor is not subject to a disqualification as set out in section 409.4-412(d), RSMo and the cash fee is paid pursuant to the requirements set out in 17 CFR Section 275.206(4)–3.

(2) Registered investment advisers may receive performance-based fees (fees based upon a share of the capital gains upon, or the capital appreciation of, the funds, or any portion of the funds, of a client) provided that the fees are charged only to qualified clients, as defined in 17 CFR Section 275.205-3, and the fees are fully disclosed in the investment advisory contract.

*AUTHORITY: sections 409.4-406(e) and 409.6-605, RSMo Supp. 2003.\* Original rule filed March 27, 1989, effective June 12, 1989. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.4-406, RSMo 2003, and 409.6-605, RSMo 2003.*

### 15 CSR 30-51.150 Records to be Preserved by Investment Advisers
(Rescinded February 29, 2004)

*AUTHORITY: sections 409.203 and 409.413(a), RSMo 1986. Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Emergency rescission filed Aug. 25, 2003, effective Sept. 12, 2003, expired March 9, 2004. Rescinded: Filed Aug. 25, 2003, effective Feb. 29, 2004.*

### 15 CSR 30-51.160 Effectiveness and Post-Effective Requirements

*PURPOSE: This rule specifies when the registration of broker-*

*dealers, agents and investment advisers becomes effective, reports required during effectiveness, and procedures for terminating the effectiveness and effecting withdrawal of registrations.*

(1) Pending Applications for Registration.
(A) Effective Date of Registration. If no denial order is in effect and no proceeding under section 409.4-412, RSMo is pending, registration shall become effective no later than noon of the forty-fifth day after the completed application is filed, unless the applicant has agreed to toll the forty-five (45)-day limitation. The forty-five (45)-day time period shall begin to run once a completed application, including any amendments thereto, is filed with the division. The running of this forty-five (45)-day period is tolled during the time a denial order is in effect, a proceeding under section 409.4-412, RSMo is pending, or by agreement of the applicant. The running of the forty-five (45)-day period shall resume when the denial order is vacated, or the proceeding under section 409.4-412, RSMo is no longer pending.
(B) Completeness of the Application. An application shall be considered complete when an application, including any amendments, has been filed with the division. A completed application shall contain comprehensive responses to all applicable questions and all attachments and exhibits, as required by the Act or these rules.
(C) Summary Suspension for Applications.
1. Pursuant to section 409.4-412(f), RSMo, the commissioner may summarily suspend an application if:
A. The commissioner, through the Securities Division staff, is seeking additional information regarding and/or relating to the application;
B. A proceeding is pending under section 409.4-412(a), (b), or (c), RSMo; or
C. The applicant is subject to discipline or disqualification under the provisions of section 409.4-412(d), RSMo.
2. A summary suspension order issued pursuant to subparagraph (1)(C)1.A. shall remain pending for thirty (30) days after all requested information has been provided and during this time the person subject to the summary suspension order may request a hearing.
(D) Orders of Cancellation for Incomplete Applications. Any application, the filing of which is not complete within a period of one (1) year following the application's original filing, shall be presumed subject to the entry of an order of cancellation pursuant to section 409.4-408(e), RSMo of the Act.

(2) Duration of Registration.
(A) Expiration of Registration. Every registration of a broker-dealer, agent, investment adviser, or investment adviser representative expires on December 31 of each year, unless renewed or unless sooner revoked, canceled, or withdrawn (section 409.4-406(d), RSMo).
(B) Failure to Renew. Upon expiration of a registration, any subsequent application for registration shall be considered and treated as an application for initial registration.
(C) Applications for renewal of registration filed directly with the commissioner shall be filed on the appropriate form marked renewal (see 15 CSR 30-51.020) with required information and exhibits, no earlier than sixty (60) days and no later than thirty (30) days before the expiration date of the registration concerned. Applications filed with the Central Registration Depository (CRD) System or Investment Adviser Registration Depository (IARD) System shall be timely filed in accordance with the requirements of the CRD or IARD.
(D) An applicant for renewal registration may incorporate by



reference in the application documents previously filed to the extent the documents are currently accurate.

(3) Continuing Duty of Applicants and Registrants to Disclose Material Information.

(A) Amendments to Applications for Material Change. During the pendency of any application, or effectiveness of any registration, every broker-dealer, agent, investment adviser, or investment adviser representative shall immediately report to the commissioner in writing any material change in any information, answers, responses, exhibits, or schedules submitted in its last prior application. A correcting amendment shall be filed with the division at the time of occurrence or discovery of these changes, and not later than thirty (30) days following the specified event or occurrence. If the application was submitted through the CRD System or IARD System, any amendment shall be submitted in accordance with the guidelines of the CRD or IARD System.

(B) Termination of an Agent or Investment Adviser Representative.

1. Duty of broker-dealer, issuer or investment adviser. When an agent's or representative's association with the broker-dealer, issuer or investment adviser is discontinued or terminated by either party, the broker-dealer, issuer or investment adviser must file a Form U-5 within thirty (30) days of the discontinuance or termination, stating the date of and reasons for the discontinuance or termination.

2. Duty of agent or investment adviser representative. When an agent's or representative's association with a broker-dealer or investment adviser registered in Missouri is discontinued or terminated by either party, the agent or investment adviser representative must file, within thirty (30) days of the discontinuance or termination, amended documents reflecting association with another broker-dealer or investment adviser.

3. Transferring agents and transferring investment adviser representatives.

A. For agents and/or investment adviser representatives registered under this Act who terminate from one Missouri registered broker-dealer, investment adviser, or federal covered investment adviser and transfer to another Missouri registered broker-dealer, investment adviser, or federal covered investment adviser that file a completed application with the division within thirty (30) days after their termination and whose CRD record does not contain any new or amended disciplinary disclosure(s) within the previous twelve (12) months, their registration shall become immediately effective as of the date of the completed filing, unless an order is issued pursuant to section 409.4-408(d), RSMo.

B. For agents and/or investment adviser representatives registered under this Act who terminate from one Missouri registered broker-dealer, investment adviser, or federal covered investment adviser and transfer to another Missouri registered broker-dealer, investment adviser, or federal covered investment adviser that file a completed application with the division within thirty (30) days after their termination and whose CRD record contains a new or amended disciplinary disclosure within the previous twelve (12) months, their registration shall become temporarily effective for thirty (30) days as of the date of the completed filing, unless an order is issued pursuant to section 409.4-408(d), RSMo. The temporary registration becomes automatically effective on the thirty-first day after the completed filing unless an order is issued pursuant to section 409.4-408(c), RSMo.

(C) Acquisition of Broker-Dealer or Investment Adviser.

1. When a person or a group of persons, directly or indirectly or acting by or through one (1) or more persons, proposes to acquire a controlling interest in a broker-dealer or investment adviser registrant and when the acquirer, within the preceding ten (10) years, has committed any act that would result in a yes answer to any disciplinary question on the Form BD or ADV or would require disclosure under 15 CSR 30-51.160(3), the resulting entity, prior to the acquisition, shall file with the division:

A. A new application for registration on the forms prescribed by rule, together with all required exhibits and fees; and

B. At the time the new application is filed, a notice of withdrawal, termination or cancellation of registration of the acquired entity on the forms prescribed by rule, effective upon disposition of the new application by the division.

2. For purposes of this section, controlling interest means possession of the power to direct or cause the direction of the management or policies of a company, whether through ownership of securities, by contract or otherwise. Any individual or firm that directly or indirectly has the right to vote twenty-five percent (25%) or more of the voting securities of a company or is entitled to twenty-five percent (25%) or more of its profits is presumed to control that company.

(D) Written Disclosure Statement.

1. An investment adviser, registered or required to be registered pursuant to the Missouri Securities Act, shall furnish each advisory client and prospective advisory client with a written disclosure statement that may be either a copy of Part II of its Form ADV, or a written document containing at least the information required by Part II of Form ADV.

2. An investment adviser shall deliver the written disclosure statement to an advisory client or prospective advisory client not less than forty-eight (48) hours prior to entering into any written or oral investment advisory contract with such client or prospective client, or at the time of entering into any such contract, if the advisory client has a right to terminate the contract without penalty within five (5) business days after entering into the contract.

3. An investment adviser annually shall, without charge, deliver or offer in writing to deliver to each of its advisory clients the written disclosure statement.

(4) Withdrawal of Registration.

(A) Broker-Dealers, Investment Advisers and Federal Covered Investment Advisers.

1. Every broker-dealer and investment adviser who desires to withdraw their registration shall file the appropriate Form BDW or ADV-W. Every federal covered adviser who desires to withdraw their notice filing shall file the appropriate ADV-W.

2. Unless a proceeding is pending under sections 409.4-412, 409.6-602, 409.6-603 or 409.6-604, RSMo when the application to withdraw is filed, the withdrawal of registration by a broker-dealer or investment adviser shall become effective on the date indicated in the Form BDW or Form ADV-W, but in no event more than sixty (60) days after the filing of the Form BDW or Form ADV-W.

(B) Broker-Dealer Agents and Investment Adviser Representatives.

1. Unless a proceeding is pending under sections 409.4-412, 409.6-602, 409.6-603 or 409.6-604, RSMo when the application to withdraw is filed, the withdrawal of registration by an agent or investment adviser representative, pursuant to section 409.4-409, RSMo shall become effective at the earlier of the


date a Form U-5 is filed, the date indicated in the Form U-5 or the date of withdrawal of the agent's or investment adviser representative's respective broker-dealer or investment adviser.

(5) Merger, Consolidation or Reorganization of Broker-Dealers. In the event of a merger, consolidation, or reorganization of an existing registered broker-dealer, and the change can be effected through the CRD System, then such documentation and information shall be filed in accordance with the guidelines of the CRD System. If the change cannot be processed through the CRD System, the following documents must be filed with the commissioner by the participating broker-dealers within ten (10) days following a merger, consolidation or reorganization:

(A) The broker-dealer dissolving at the consummation of the merger or who will become a part of an existing broker-dealer upon reorganization or consolidation must file:

1. A termination of its broker-dealer registration on Form BDW;

2. A termination of all agent registrations; and

3. A complete explanation of the proposed merger, consolidation or reorganization accompanied by the agreement effecting the merger, consolidation or reorganization.

(B) The broker-dealer who will be the surviving corporation upon consummation of the merger or who will be the named broker-dealer after the reorganization or consolidation must file:

1. A complete explanation of the proposed merger;

2. Form U-4 applications plus supporting documents of all registered agents of the dissolving broker-dealer to be transferred to the surviving, consolidated or reorganized broker-dealer in accordance with 15 CSR 30-51.160(3) and 15 CSR 30-51.020; and

3. If the name of the surviving, consolidated or reorganized broker-dealer will change, an amended Form BD, as appropriate and all other properly amended documents required by 15 CSR 30-51.020 and 15 CSR 30-51.160.

*AUTHORITY: sections 409.4-406, 409.4-408, 409.4-409, 409.4-411(b) and 409.6-605, RSMo Supp. 2003.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Dec. 19, 1975, effective Dec. 31, 1975. Amended: Filed Aug. 11, 1978, effective Feb. 11, 1979. Emergency amendment filed Aug. 15, 1983, effective Aug. 29, 1983, expired Dec. 26, 1983. Amended: Filed Aug. 15, 1983, effective Nov. 11, 1983. Amended: Filed March 27, 1989, effective June 12, 1989. Emergency amendment filed Aug. 4, 1995, effective Aug. 14, 1995, expired Dec. 11, 1995. Amended: Filed Aug. 4, 1995, effective Jan. 30, 1996. Rescinded and readopted: Filed Dec. 17, 2001, effective July 30, 2002. Amended: Filed Aug. 30, 2002, effective Feb. 28, 2003. Emergency amendment filed Sept. 9, 2003, effective Sept. 19, 2003, expired March 16, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004. Amended: Filed Aug. 10, 2004, effective Feb. 28, 2005.*

*\*Original authority: 409.4-406, RSMo 2003; 409.4-408, RSMo 2003; 409.4-409, RSMo 2003; 409.4-411, RSMo 2003; and 409.6-605, RSMo 2003.*

## 15 CSR 30-51.165 Networking Arrangements Between Broker-Dealers and Banks, Trust Companies or Savings Institutions

*PURPOSE: This rule prescribes the activities in which a bank, a trust company organized or chartered under the laws of Missouri, or savings institution may engage in under a networking arrangement and be excepted from the definition of broker-dealer under the Missouri Securities Act of 2003.*

(1) Definition. For purposes of this rule, the reference to the term "banking institution" shall mean a bank, trust company organized or chartered under the laws of Missouri, or a savings institution.

(2) Exception from the Definition of Broker-Dealer. A banking institution shall be excepted from the definition of broker-dealer under section 409.1-102(4), RSMo if such banking institution enters into a contractual or other written arrangement with a broker-dealer registered under the Missouri Securities Act of 2003 whereupon the broker-dealer offers brokerage services on or off the premises of the banking institution and —

(A) Such broker-dealer is clearly identified as the person performing the brokerage services;

(B) The broker-dealer performs brokerage services in an area that is clearly marked and, to the extent practicable, physically separate from the routine deposit-taking activities of the banking institution;

(C) Any materials used by the banking institution to advertise or promote generally the availability of brokerage services under the arrangement clearly indicate that the brokerage services are being provided by the broker-dealer and not by the banking institution;

(D) Any materials used by the banking institution to advertise or promote generally the availability of brokerage services under the arrangement are in compliance with Missouri and federal securities laws before distribution;

(E) Employees of the banking institution (other than agents of a broker-dealer who are registered under the Missouri Securities Act of 2003 and qualified pursuant to the rules of a self-regulatory organization) perform only clerical or ministerial functions in connection with brokerage transactions including scheduling appointments with the agents of a broker-dealer, except that employees of a banking institution may forward customer funds or securities and may describe in general terms the types of investment vehicles available from the banking institution and the broker-dealer under the arrangement;

(F) Employees of the banking institution do not receive incentive compensation for any brokerage transaction unless such employees are agents of a broker-dealer, are registered under the Missouri Securities Act of 2003 and qualified pursuant to the rules of a self-regulatory organization, except that the employees of the banking institution may receive compensation for the referral of any customer if the compensation is a nominal one-time cash fee of a fixed dollar amount and the payment of the fee is not contingent on whether the referral results in a transaction;

(G) Such services are provided by the broker-dealer on a basis in which all customers that receive any services are fully disclosed to the broker-dealer;

(H) The banking institution does not carry a securities account of the customer except as permitted under sections 3(a)(4)(B)(ii) (trust activities) or 3(a)(4)(B)(viii) (safekeeping and custody activities) of the Securities Exchange Act of 1934; and

(I) The banking institution or broker-dealer informs each customer that the brokerage services are provided by the broker-dealer and not by the banking institution and that the securities are not deposits or other obligations of the banking institution, are not guaranteed by the banking institution, and are not insured by the Federal Deposit Insurance Corporation.

*AUTHORITY: sections 409.1-102(4) and 409.6-605, RSMo Supp.*



*2003.\* Emergency rule filed Aug. 29, 2003, effective Sept. 12, 2003, expired March 9, 2004. Original rule filed Aug. 29, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.1-102, RSMo 2003, and 409.6-603, RSMo 2003.*

**15 CSR 30-51.169 Fraudulent Practices of Broker-Dealers and Agents**

*PURPOSE: This rule identifies practices in the securities business which are generally associated with schemes to manipulate.*

(1) A broker-dealer or agent who engaged in one (1) or more of the following practices shall be deemed to have engaged in an "act, practice or course of business which operates or would operate as a fraud" as used in section 409.5-501 of the Missouri Securities Act of 2003 (the Act). This rule is not intended to be all inclusive and acts or practices not enumerated in this rule may also be deemed fraudulent:

(A) Entering into a transaction with a customer in any security at an unreasonable price or at a price not reasonably related to the current market price of the security or receiving an unreasonable commission or profit;

(B) Contradicting or negating the importance of any information contained in a prospectus or other offering materials with intent to deceive or mislead or using any advertising or sales presentation in a deceptive or misleading manner;

(C) In connection with the offer, sale or purchase of a security, falsely leading a customer to believe that the broker-dealer or agent is in possession of material, nonpublic information which would have an impact on the value of the security;

(D) In connection with the solicitation of a sale or purchase of a security, engaging in a pattern or practice of making contradictory recommendations to different investors of similar investment objective for some to sell and others to purchase the same security, at or about the same time, when not justified by the particular circumstances of each investor;

(E) Failing to make a bona fide public offering of all the securities allotted to a broker-dealer for distribution by, among other things – 1) transferring securities to a customer, another broker-dealer or a fictitious account with the understanding that those securities will be returned to the broker-dealer or its nominees, or 2) parking or withholding securities;

(F) Although nothing in this rule precludes application of the general anti-fraud provisions against anyone for practices similar in nature to the practices discussed as follows, the following paragraphs specifically apply only in connection with solicited offers or sales of designated securities in transactions not exempted in the following:

1. Failing to disclose at the time of solicitation, in either a principal or agency transaction, the price at which the broker-dealer is currently selling or offering to sell the designated security and the price at which the broker-dealer is currently buying or offering to buy the designated security, and failing to disclose those prices, which were in effect at the time of execution, on the trade confirmation of the transaction;

2. Failing to disclose, at the time of solicitation and on the trade confirmation, all compensation to be paid to the agent as a result of the transaction;

3. In connection with a principal transaction by a market maker, failing to disclose, both at the time of solicitation and on the confirmation, a short inventory position in the firm's account of more than five percent (5%) of the issued and outstanding shares of that class of securities of the issuer;

4. Conducting sales contests solely with respect to a particular security;

5. Failing or refusing to promptly execute sell orders on behalf of a customer;

6. Soliciting a secondary market transaction when there has not been a bona fide distribution in the primary market;

7. Engaging in a pattern of enhancing the compensation of an agent with respect to sales and purchases in the same security;

8. In connection with the solicitation of a sale of an equity security, or a security containing an equity component, in which the difference between the bid and ask price is twenty-five percent (25%) or more of the ask price, to fail to –

A. Disclose to the customer the bid and ask price of the designated security as well as its spread in both percentage and dollar amounts at the time of solicitation; and

B. Include with the confirmation, in a form satisfactory to the commissioner, written explanation of the bid and ask price;

9. For the purposes of subsection (1)(F), the following shall be exempt transactions:

A. Transactions in which the price of the designated security is five dollars ($5) or more, provided, however, that if the designated security is a unit composed of one (1) or more securities, the unit price divided by the number of components of the unit other than warrants, options, rights or similar securities must be five dollars ($5) or more, and any component of the unit that is a warrant, option, right or similar security or a convertible security must have an exercise price or conversion price of five dollars ($5) or more;

B. Transactions that are not recommended by the broker-dealer;

C. Transactions by a broker-dealer –

(I) Whose commissions, commission equivalents and mark-ups from transactions in designated securities during each of the immediately preceding three (3) months, and during eleven (11) or more of the preceding twelve (12) months, did not exceed five percent (5%) of its total commissions, commission-equivalents and mark-ups from transactions in securities during those months; and

(II) Who has not been a market maker in the designated security that is the subject of the transaction in the immediately preceding twelve (12) months; and

D. Any transaction(s) that, upon prior written request or upon its own motion, the commissioner conditionally or unconditionally exempts as not encompassed within the purposes of subsection (1)(F); and

10. For the purposes of subsection (1)(F) –

A. The term designated security shall mean any equity security other than a security –

(I) Registered, or approved for registration upon notice of issuance, on a national securities exchange recognized under 409.2-201(6), RSMo;

(II) Exempted as a foreign issuer pursuant to 15 CSR 30-54.260;

(III) Authorized, or approved for authorization upon notice of issuance, for quotation in the National Market System of the National Association of Securities Dealers Automated Quotation System;

(IV) Issued by an investment company registered under the Investment Company Act of 1940;

(V) That is a put option or call option issued by The Options Clearing Corporation; or

(VI) Whose issuer has net tangible assets in excess of

Case 2:23-cv-04154-SRB   Document 21-1   Filed 10/02/23   Page 14 of 23


four (4) million dollars, as demonstrated by financial statements dated less than fifteen (15) months previously that the broker-dealer has reviewed and has a reasonable basis to believe on the date of the transaction with the person, there have been no adverse changes to the issuer's most current financial statement and —

(a) In the event the issuer is other than a foreign private issuer, the most recent financial statements for the issuer have been audited and reported on by an independent public accountant in accordance with the provisions of 17 CFR 210.2.02; or

(b) In the event the issuer is a foreign private issuer, are the most recent financial statements for the issuer that have been filed with the commissioner, furnished to the commissioner pursuant to 17 CFR 240.12g3-2(b) or prepared in accordance with generally accepted accounting principles in the country of incorporation, audited in compliance with the requirements of that jurisdiction and reported on by an accountant duly registered and in good standing in accordance with the regulations of that jurisdiction;

(G) Effecting any transaction in, or inducing the purchase or sale of any security by means of any manipulative, deceptive or other fraudulent device or contrivance including, but not limited to, the use of boiler-room tactics or use of fictitious or nominee accounts; and

(H) Failure to comply with any prospectus delivery requirement promulgated under federal law.

*AUTHORITY: sections 409.2-201, 409.4-412, 409.5-501 and 409.6-605, RSMo Supp. 2003.\* Original rule filed March 27, 1989, effective June 12, 1989. Amended: Filed June 29, 1990, effective Dec. 31, 1990. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004.*

*\*Original authority: 409.2-201, RSMo 2003; 409.4-412, RSMo 2003; 409.5-501, RSMo 2003.*

**15 CSR 30-51.170 Dishonest or Unethical Business Practices by Broker-Dealers and Agents**

*PURPOSE: This rule identifies dishonest or unethical business practices for broker-dealers or agents.*

(1) Grounds for the discipline or disqualification of broker-dealers or agents shall include, in addition to other grounds specified in section 409.4-412(d) of the Missouri Securities Act of 2003 (the Act), the following "dishonest or unethical practices in the securities business":

(A) Unreasonable and unjustifiable delaying or failing to execute orders, liquidating customers' accounts or in making delivery of securities purchased or in paying upon request of free credit balances reflecting completed transactions of any of its customers;

(B) Entering into a transaction with or for a customer at a price not reasonably related to the current market price of the security or receiving an unreasonable commission or profit;

(C) Effecting transactions in the account of a customer without authority to do so; or exercising any discretionary power in effecting a transaction for a customer's account without first obtaining written discretionary authority from the customer, unless the discretionary power relates solely to the time or price, or both, for the execution of orders;

(D) Inducing trading in a customer's account that is excessive in size or frequency in view of the financial resources and character of the account for the purpose of accumulation or compounding commissions;

(E) Recommending to a customer the purchase, sale, or exchange of any security commodity or other investment without reasonable grounds to believe that this transaction or recommendation is suitable for the customer based upon reasonable inquiry concerning the customer's investment objectives, financial situation and needs, and any other relevant information known by the applicant or registrant;

(F) Engaging in or aiding in boiler-room operations or high pressure tactics in connection with the promotion of speculative offerings or hot issues by means of an intensive telephone campaign or unsolicited calls to persons not known by, nor having an account with, the agent or broker-dealer represented by the agent, where the prospective purchaser is encouraged to make a hasty decision to buy, irrespective of his/her investment needs and objectives;

(G) Failing to furnish to a customer purchasing securities in an offering, no later than the date of confirmation of the transaction, either a final prospectus or a preliminary prospectus and an additional document, which together include all information set forth in the final prospectus, or making oral or written statements contrary to or inconsistent with the disclosures contained in the prospectus;

(H) Making false, misleading, deceptive, exaggerated or flamboyant representations or predictions in the solicitation or sale of a security, as, for example:

1. That the security will be resold or repurchased;

2. That it will be listed or traded on an exchange or established market;

3. That it will result in an assured, immediate or extensive increase in value, future market price or return on investment;

4. With respect to the issuer's financial condition, anticipated earnings, potential growth or success;

5. That there is a guarantee against risk or loss; or

6. A representation that a security is being offered to a customer at the market or a price related to the market price unless the applicant or registrant knows or has reasonable grounds to believe that —

A. A market for the security exists other than that made, created, or controlled by the applicant or registrant, or by any person for whom s/he is acting or with whom s/he is associated in the distribution, or any person controlled by, controlling or under common control with the applicant or registrant; or

B. The security is traded in an established securities market, and the fact that the applicant or registrant is in a control position with respect to the market for that security is fully disclosed to the investor;

(I) Failing to disclose a dual agency capacity or effecting transactions upon terms and conditions other than those stated per confirmations; or failing to disclose that the applicant or registrant is controlled by, controlling, receiving compensation from, affiliated with or under common control with the issuer of any security before entering into any contract with or for a customer for the purchase or sale of the security, or if this disclosure is not made in writing, failing to give or send a written disclosure at or before the completion of the transaction;

(J) Failing to make a bona fide public offering of all the securities allotted to a broker-dealer for distribution, whether acquired as an underwriter, a selling group member, or from a member participating in the distribution as an underwriter or selling group member; or entering into an underwriting or selling group agreement which establishes unfair or unreasonable terms and conditions or compensation;



(K) Establishing fictitious accounts in order to execute transactions which would otherwise be prohibited;

(L) Entering into agreements for selling concessions, discounts, commissions or allowances as consideration for services in connection with the distribution or sale of a security in Missouri to any unregistered broker-dealer or agent, or dividing or otherwise splitting the agent's commissions, profits or other compensation from the purchase or sale of securities with any person not also registered as an agent for the same broker-dealer, or for a broker-dealer under direct or common control unless that person is not required to be registered in order to engage in the securities business in Missouri;

(M) Failing or refusing to furnish a customer, upon reasonable request, information to which s/he is entitled, or to respond to a formal written demand or complaint;

(N) Extending, arranging for, or participating in arranging for, credit to a customer in violation of the regulations of the Securities and Exchange Commission or the regulations of the Federal Reserve Board;

(O) Failing to secure from the customer a properly executed written margin agreement that authorizes the existence of the margin account promptly after the initial transaction in the account;

(P) Failing to segregate customers' free securities or securities held in safekeeping;

(Q) Hypothecating a customer's securities without having a lien on the security unless the broker-dealer secures from the customer a properly executed written consent except as permitted by rules of the Securities and Exchange Commission;

(R) Charging unreasonable and inequitable fees for services performed, including miscellaneous services such as collection of monies due for principal, dividends, or interest, exchange or transfer of securities, appraisals, safekeeping or custody of securities and other services related to its securities business;

(S) Offering to buy from or sell to any person any security at a stated price unless the applicant or registrant is prepared to purchase or sell, as the case may be, at a price and under the conditions as are stated at the time of the offer to buy or sell;

(T) Effecting any transaction in, or inducing the purchase or sale of, any security by means of any manipulative, deceptive or fraudulent device, practice, plan, program, design or contrivance, including but not limited to:

1. Effecting any transaction in a security which involves no change in the beneficial ownership of the security; and

2. Effecting, alone or with one (1) or more other persons, a transaction or series of transactions in any security creating actual or apparent active trading in the security or raising or depressing the price of the security, for the purpose of inducing the purchase or sale of the security by others;

(U) Publishing or circulating or causing to be published or circulated, any notice, circular, advertisement, newspaper article, investment service or communication of any kind which purports to report any transaction as a purchase or sale of any security unless the applicant or registrant believes that the transaction was a bona fide purchase or sale of this security; or which purports to quote the bid or asked price for any security, unless the applicant or registrant believes that the quotation represents a bona fide bid for, or offer of, the security; or using any advertising or sales material in such a fashion as to be deceptive or misleading, such as the distribution of any nonfactual datum, material, or presentation based on conjecture, unfounded or unrealistic claims or assertions in any brochure, flyer, or display by words, pictures, graphs, or otherwise, designed to supplement, detract from, supersede, or defeat the purpose or effect of any prospectus or disclosure;

(V) Borrowing of money or securities from a customer by an agent, or for an agent to act as a custodian for money, securities, or an executed stock power of a customer;

(W) Sharing, by an agent, directly or indirectly, in profits or losses in the account of any customer without the written authorization of the customer and the broker-dealer the agent represents;

(X) Effecting securities transactions not recorded on the regular books or records of the broker-dealer the agent represents, unless the transactions are authorized in writing by the broker-dealer prior to the execution of the transaction;

(Y) Stating, implying, or otherwise indicating, in connection with the solicitation of the securities transaction, that the market price of a security is readily or generally available unless the market price of that security is reported at least daily in a bona fide newspaper that does not receive any special compensation for reporting the market price of securities or any particular issuer(s);

(Z) In connection with the solicitation of a sale or purchase of an Over the Counter (OTC) non-National Association of Securities Dealers Automated Quotation (NASDAQ) security, failing to promptly provide the most current prospectus or the most recently filed periodic report filed under Section 13 of the Securities Exchange Act when requested to do so by a customer;

(AA) Marking any order tickets or confirmations as unsolicited when in fact the transaction was solicited;

(BB) Failing to comply with any applicable provision of the Conduct Rules of Financial Industry Regulatory Authority (FINRA), any applicable fair practice or ethical standard promulgated by the Securities and Exchange Commission, or by a self-regulatory organization approved by the Securities and Exchange Commission;

(CC) Engaging in any acts or practices enumerated in 15 CSR 30-51.169; and

(DD) Aiding or abetting any of the acts or practices enumerated in this rule.

(2) It shall be a dishonest or unethical practice in the securities business for a broker-dealer or its agent to use a senior specific certification or designation in connection with the offer, sale, or purchase of securities that indicates or implies that the user has special certification or training in advising or servicing elderly persons, in such a way as to mislead any person.

(A) The prohibited use of such certifications or professional designation includes, but is not limited to, the following:

1. Use of a certification or professional designation by a person who has not actually earned or is otherwise ineligible to use such certification or designation;

2. Use of a nonexistent or self-conferred certification or professional designation;

3. Use of a certification or professional designation that indicates or implies a level of occupational qualifications obtained through education, training, or experience that the person using the certification or professional designation does not have; and

4. Use of a certification or professional designation that was obtained from a designating or certifying organization that is not qualified.

(B) A designating or certifying organization is "qualified" for purposes of paragraph (2)(A)4. above when the organization has been accredited by—

1. The American National Standards Institute;

2. The National Commission for Certifying Agencies; or

3. An organization that is on the United States Department of Education's list entitled "Accrediting Agencies Recognized

Case 2:23-cv-04154-SRB   Document 121-1   Filed 10/02/23   Page 16 of 23



for Title IV Purposes" and the designation or credential issued therefrom does not primarily apply to sales and/or marketing.

(C) In determining whether a combination of words (or an acronym standing for a combination of words) constitutes a certification or professional designation indicating or implying that an adviser has special certification or training in advising or servicing senior citizens or retirees, factors to be considered shall include:

1. Use of one (1) or more words such as "senior," "retirement," "elder," or like words, combined with one (1) or more words such as "certified," "registered," "chartered," "adviser," "specialist," "consultant," "planner," or like words, in the name of the certification or professional designation; and

2. The manner in which those words are combined.

(D) For purposes of this rule—

1. "Certification or professional designation" does not include a job title within an organization that is licensed or registered by a state or federal financial services regulatory agency, when that job title—

A. Indicates seniority or standing within the organization; or

B. Specifies an individual's area of specialization within the organization;

2. "Elderly person" is a person sixty (60) years of age or older; and

3. "Federal financial services regulatory agency" includes, but is not limited to, any agency that regulates—

A. Broker-dealers;

B. Investment advisers; or

C. Investment companies as defined under the Investment Company Act of 1940.

(E) Nothing in this rule shall limit the commissioner's authority to enforce existing provisions of law.

(F) This rule shall take effect on January 1, 2009.

(3) Failing to disclose to any customer or prospective customer the following material fact:

(A) If a broker-dealer or agent incorporates a social objective or other nonfinancial objective into a discretionary investment decision to buy or sell a security or commodity for a customer, a recommendation and/or solicitation to a customer for the purchase or sale of a security or commodity, or the selection, or recommendation or advice to a customer regarding the selection, of a third-party manager or subadviser to manage the investments in the customer's account, then such broker-dealer or agent shall disclose to such customer the existence of such incorporation.

(B) As used in this section, the following terms mean:

1. "Agent," the same meaning as under section 409.1-102;

2. "Broker-dealer," the same meaning as under section 409.1-102;

3. "Incorporates a social objective," means the material fact to consider socially responsible criteria in the investment or commitment of customer funds for the purpose of seeking to obtain an effect other than the maximization of financial return to the customer;

4. "Nonfinancial objective," means the material fact to consider criteria in the investment or commitment of customer funds for the purpose of seeking to obtain an effect other than the maximization of financial return to the customer;

5. "Socially responsible criteria," any criterion that is intended to further, or is branded, advertised, or otherwise publicly described by the broker-dealer or agent as furthering, any of the following:

A. International, domestic, or industry agreements relating to environmental or social goals;

B. Corporate governance structures based on social characteristics; or

C. Social or environmental goals;

(C) The disclosure obligation under subsection (3)(A) is satisfied by providing clear and conspicuous prior disclosure and obtaining written acknowledgment and consent from the customer. Written consent shall be obtained either—

1. At the establishment of the brokerage relationship; or

2. Prior to—

A. Effecting the initial discretionary investment for the customer's account;

B. Providing the initial recommendation, advice, or solicitation regarding the purchase or sale of a security or commodity in a customer's account; or

C. Selecting, or recommending or advising on the selection of, a third-party manager or subadviser to manage the investments in a customer's account;

3. Such disclosure, thereafter, shall be provided to the customer on an annual basis and, no less than every three (3) years, consented in writing by the customer; and

(D) Written consent required under subsection (3)(C) shall contain language that is substantially similar to the following:

"I, [NAME OF CUSTOMER], consent to my [as applicable, NAME OF BROKER-DEALER OR AGENT] incorporating a social objective or other nonfinancial objective into any discretionary investment decision my [as applicable, BROKER-DEALER OR AGENT] makes for my account; any recommendation, advice, or solicitation my [as applicable, BROKER-DEALER OR AGENT] makes to me for the purchase or sale of a security or commodity; or the selection my [as applicable, BROKER-DEALER OR AGENT] makes, or recommendation or advice my [as applicable, BROKER-DEALER OR AGENT] makes to me regarding the selection of, a third-party manager or subadviser to manage the investments in my account. Also, I acknowledge and understand that incorporating a social objective or other nonfinancial objective into discretionary investment decisions, recommendations, advice, and/or the selection of a third-party manager or subadviser to manage the investments, in regards to my account, will result in investments and recommendations/advice that are not solely focused on maximizing a financial return for me or my account."

(4) The conduct set forth above is not inclusive. Engaging in other conduct such as nondisclosure or incomplete disclosure of material fact or other deceptive practices are dishonest or unethical business practices.

*AUTHORITY: section 409.6-605, RSMo 2016.\* Original rule filed June 25, 1968, effective Aug. 1, 1968. Amended: Filed May 21, 1969, effective Aug. 1, 1969. Amended: Filed July 21, 1972, effective Aug. 1, 1972. Amended: Filed Nov. 15, 1974, effective Nov. 25, 1974. Amended: Filed Oct. 13, 1983, effective Jan. 13, 1984. Amended: Filed Oct. 16, 1987, effective Feb. 12, 1987. Amended: Filed March 27, 1989, effective June 12, 1989. Amended: Filed July 3, 1989, effective Sept. 28, 1989. Amended: Filed Aug. 28, 1989, effective Feb. 11, 1990. Amended: Filed June 29, 1990, effective Dec. 31, 1990. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004. Amended: Filed April 8, 2004, effective Oct. 30, 2004. Amended: Filed March 31, 2008, effective Jan. 1, 2009. Amended: Filed July 19, 2019, effective Jan. 30, 2020. Amended: Filed Dec. 15, 2022, effective July 30, 2023.*



*Original authority: 409.6-605, RSMo 2003.*

## 15 CSR 30-51.171 Supervision Guidelines for Broker-Dealers

*PURPOSE: This rule provides guidance for reasonable supervision by broker-dealers.*

(1) The phrase "failed reasonably to supervise" under section 409.4-412(d)(9) of the Missouri Securities Act of 2003 (the Act) is a standard allowing each broker-dealer (firm) the flexibility to fashion procedures and systems that address its particular organizational and management structure. Yet the following are guidelines that provide guidance to broker-dealers of factors considered by the commissioner in evaluating reasonable supervision.

(2) The following guidelines shall be factors in considering what is reasonable supervision, whether:
(A) The firm has established current procedures and systems for supervising the activities of agents, employees, and Missouri office operations that are reasonably designed to achieve compliance with applicable state and federal securities laws and regulations, and, if applicable, the rules of the Financial Industry Regulatory Authority (FINRA);
(B) The firm has established current procedures and systems that could reasonably be expected to allow a supervisor reasonably discharging his/her supervisory duties under such established procedures to prevent and detect violations of the Act, and the firm regularly reviews these procedures and systems;
(C) The firm has reasonably implemented the procedures and systems referred to in subsections (A) and (B) above;
(D) The firm provides appropriate initial and periodic refresher training to supervisors, employees, and agents regarding the firm's procedures and systems and additional initial and periodic training to supervisors in the procedures and systems referred to in subsections (A) and (B) above;
(E) The firm reasonably follows up on indications of wrongdoing, "red flags." Such red flags may consist of, but are not limited to, activities of unauthorized personnel, churning, unauthorized trading, low level of production but high expenses, regulatory actions, prior disciplinary history of one (1) or more customer complaints, and recent customer complaints;
(F) The firm has an adequate system to track and monitor the status of customer complaints;
(G) The firm has designated a qualified supervisor of the broker-dealer for each agent or employee;
(H) The designated supervisor of agents located in Missouri maintains a principal place of business in Missouri, or in a location that allows the supervisor to visit the premises of supervised agents in Missouri within a reasonable time;
(I) The designated supervisor is responsible for supervising no more agents at any one (1) time than would allow the supervisor to effectively execute his/her supervisory duties. The appropriate number of agents which one (1) person can reasonably supervise is dependent on the nature of the business conducted by the persons supervised, technical resources available to the supervisor, additional personnel available to assist the supervisor, and other resources made available to assist the supervisor;
(J) The firm conducts annual compliance examinations of supervisory locations with effective deficiency and follow-up procedures. Unannounced examinations may be reasonable

if there are compliance issues concerning agents or activities;
(K) The firm reasonably audits for compliance including reasonable follow-up and proof, independent of the agent, that mail is reviewed for customer complaints and other red flags;
(L) The firm has and implements procedures and systems for reasonable oversight of supervisors; and
(M) The firm has a reasonable policy for disciplinary and progressive supervisory action, which is reasonably implemented.

*AUTHORITY: sections 409.4-412(d)(9) and 409.6-605, RSMo Supp. 2008.\* Original rule filed Jan. 23, 2004, effective July 30, 2004. Amended: Filed May 21, 2009, effective Nov. 30, 2009.*

*\*Original authority: 409.4-412, RSMo 2003 and 409.6-605, RSMo 2003.*

## 15 CSR 30-51.172 Dishonest or Unethical Business Practices by Investment Advisers and Investment Adviser Representatives

*PURPOSE: This rule identifies dishonest or unethical business practices for investment advisers or investment adviser representatives.*

(1) Grounds for the discipline or disqualification of investment advisers or investment adviser representatives (adviser) shall include, in addition to other grounds specified in section 409.4-412(d) of the Missouri Securities Act of 2003 (the Act), the following "dishonest or unethical practices in the securities business":
(A) Recommending to a client to whom investment, supervisory, management, or consulting service are provided that he/she purchase, sell, or exchange any security, commodity, or other investment when the adviser does not have reasonable grounds to believe that the recommendation is suitable for the client on the basis of information furnished by the client after reasonable inquiry concerning the client's overall portfolio, investment objectives, financial situation and needs, investment experience, and any other information known by the adviser;
(B) Inducing trading in a client's account when:
1. The size or frequency of such trading is excessive given the financial resources, investment objectives, and character of the account; and
2. The adviser directly benefits from the number of securities transactions effected in a client's account;
(C) Ordering the purchase or sale of a security for a client's account without authority to do so;
(D) Ordering the purchase or sale of a security for a client's account upon a third-party's instruction without first receiving the client's third-party trading authorization in writing;
(E) Establishing fictitious accounts in order to execute transactions, which would otherwise be prohibited;
(F) Exercising any discretionary power in ordering the purchase or sale of securities for a client without first obtaining the client's written discretionary authority within ten (10) business days after the date of the first transaction placed pursuant to oral discretionary authority, unless the discretionary power relates solely to the price at which, or the time when, an order involving a definite amount of a specified security shall be executed, or both;
(G) Borrowing money or securities from a client unless the client is a broker-dealer, an affiliate of the investment adviser, or a financial institution engaged in the business of loaning



funds;

(H) Lending money to a client unless the investment adviser is a financial institution engaged in the business of lending funds or the client is an affiliate of the adviser;

(I) Failing to furnish to a client purchasing securities in an offering, no later than the date of confirmation of the transaction, either a final prospectus or a preliminary prospectus and an additional document, which together include all information set forth in the final prospectus, or making oral or written statements contrary to or inconsistent with the disclosures contained in the prospectus;

(J) Misrepresenting to any client or prospective client the qualifications of the adviser or its employees, or to misrepresent the nature of the advisory services being offered or fees to be charged for such services, or to omit to state a material fact necessary to make the statements made regarding qualifications, services or fees, in light of the circumstances under which they are made, not misleading;

(K) Providing to a client a report or recommendation prepared by someone other than the adviser without also disclosing to the client that someone else prepared that report or recommendation. This prohibition does not apply to an adviser's use of published research reports or statistical analysis when rendering advice, nor when an adviser orders such a report in the normal course of providing service;

(L) Rendering advice to a client before making written disclosure to that client about any material conflict of interest relating to the adviser, its representative, or any of its employees, when that conflict could reasonably be expected to impair the rendering of unbiased and objective advice including:

1. Compensation arrangements connected with advisory services to clients which are in addition to compensation from those clients for such services; and

2. Charging a client an advisory fee for rendering advice when the adviser or its employees will also receive a commission for executing securities transactions pursuant to that advice;

(M) Failing to disclose to any client or prospective client all material facts with respect to:

1. Any financial condition of the adviser that is reasonably likely to impair the ability of the adviser to meet contractual commitments to clients, if the adviser has discretionary authority (express or implied) or custody over such client's funds, assets, or securities, or requires payment of advisory fees six (6) or more months in advance and in excess of five hundred dollars ($500) per client; or

2. Any legal or disciplinary event that is material to an evaluation of the adviser's integrity or ability to meet contractual commitments to clients;

(N) Charging a client an unreasonable and inequitable advisory fee in light of the fees charged by other advisers providing essentially the same services;

(O) Paying solicitor fees if such fees are not paid in accordance with 15 CSR 30-51.145(1), charging performance based fees that are not in accordance with 15 CSR 30-51.145(2), or having custody or possession of a client's funds and/or securities if such custody or possession is not maintained in accordance with 15 CSR 30-51.100. Custody shall include holding checks drawn by the client and made out to a third party for more than one (1) business day;

(P) Guaranteeing a client that a specific result will be achieved (gain or no loss) as a result of advice that will be rendered;

(Q) Disclosing the identity, affairs, or investments of any client to any third party unless required by law to do so, or unless consented to by the client;

(R) Entering into, extending, or renewing any investment advisory contract, other than a contract for impersonal advisory services, unless such contract is in writing and discloses, in substance —

1. The services to be provided;

2. The term of the contract;

3. The advisory fee or the formula for computing the fee;

4. The amount or the manner of calculation of the amount of the prepaid fee to be returned in the event of contract termination or nonperformance;

5. Whether the contract grants discretionary power to the adviser or its representatives;

6. That no assignment of such contract shall be made by the adviser without the client's written consent; and

7. That the investment adviser or investment adviser representative is authorized to record and retain information about the client's designated trusted contact, and to inform the trusted contact person of the designation and disclose information about the client's account in accordance with 15 CSR 30-51.075;

(S) Publishing, circulating, or distributing any advertisement that does not comply with 17 CFR section 275.206(4)-1;

(T) Failing or refusing to furnish a customer, upon reasonable request, information to which s/he is entitled, or to respond to a formal written reprimand or complaint;

(U) Engaging in any conduct or act, either directly or indirectly through any other person, which would violate any applicable professional, fair practice, or ethical standard established by state or federal law or regulation; and

(V) Aiding or abetting any of the acts or practices enumerated in this rule.

(2) It shall be a dishonest or unethical practice in the securities business for an adviser to use a senior specific certification or designation in connection with the offer, sale, or purchase of securities, or the provision of advice as to the value or of the advisability of investing in, purchasing, or selling securities, either directly or indirectly or through publications or writings, or by issuing or promulgating analyses or reports relating to securities, that indicates or implies that the user has special certification or training in advising or servicing elderly persons, in such a way as to mislead any person.

(A) The prohibited use of such certifications or professional designation includes, but is not limited to, the following:

1. Use of a certification or professional designation by a person who has not actually earned or is otherwise ineligible to use such certification or designation;

2. Use of a nonexistent or self-conferred certification or professional designation;

3. Use of a certification or professional designation that indicates or implies a level of occupational qualifications obtained through education, training, or experience that the person using the certification or professional designation does not have; and

4. Use of a certification or professional designation that was obtained from a designating or certifying organization that is not qualified.

(B) A designating or certifying organization is "qualified" for purposes of paragraph (2)(A)4. above when the organization has been accredited by —

1. The American National Standards Institute;

2. The National Commission for Certifying Agencies; or

3. An organization that is on the United States Department of Education's list entitled "Accrediting Agencies Recognized for Title IV Purposes" and the designation or credential issued

Case 2:23-cv-04154-SRB   Document 21-1   Filed 10/02/23   Page 19 of 23



therefrom does not primarily apply to sales and/or marketing.

(C) In determining whether a combination of words (or an acronym standing for a combination of words) constitutes a certification or professional designation indicating or implying that an adviser has special certification or training in advising or servicing senior citizens or retirees, factors to be considered shall include:

1. Use of one (1) or more words such as "senior," "retirement," "elder," or like words, combined with one (1) or more words such as "certified," "registered," "chartered," "adviser," "specialist," "consultant," "planner," or like words, in the name of the certification or professional designation; and

2. The manner in which those words are combined.

(D) For purposes of this rule—

1. "Certification or professional designation" does not include a job title within an organization that is licensed or registered by a state or federal financial services regulatory agency, when that job title—

A. Indicates seniority or standing within the organization; or

B. Specifies an individual's area of specialization within the organization;

2. "Elderly person" is a person sixty (60) years of age or older; and

3. "Federal financial services regulatory agency" includes, but is not limited to, any agency that regulates—

A. Broker-dealers;

B. Investment advisers; or

C. Investment companies as defined under the Investment Company Act of 1940.

(E) Nothing in this rule shall limit the commissioner's authority to enforce provisions of law.

(F) This rule shall take effect on January 1, 2009.

(3) Failing to disclose to any client or prospective client the following material fact:

(A) If an investment adviser or investment adviser representative incorporates a social objective or other nonfinancial objective into a discretionary investment decision to buy or sell a security or commodity for a client, advice or a recommendation to a client for the purchase or sale of a security or commodity, or the selection, or advice or a recommendation to a client regarding the selection, of a third-party manager or subadviser to manage the investments in the client's account, then such investment adviser or investment adviser representative shall disclose to such client the existence of such incorporation.

(B) As used in this section, the following terms mean:

1. "Incorporates a social objective," means the material fact to consider socially responsible criteria in the investment or commitment of client funds for the purpose of seeking to obtain an effect other than the maximization of financial return to the client;

2. "Investment adviser," the same meaning as under section 409.1-102;

3. "Investment adviser representative," the same meaning as under section 409.1-102;

4. "Nonfinancial objective," means the material fact to consider criteria in the investment or commitment of client funds for the purpose of seeking to obtain an effect other than the maximization of financial return to the client;

5. "Socially responsible criteria," any criterion that is intended to further, or is branded, advertised, or otherwise publicly described by the investment adviser or investment adviser representative as furthering, any of the following:

A. International, domestic, or industry agreements relating to environmental or social goals;

B. Corporate governance structures based on social characteristics; or

C. Social or environmental goals;

(C) The disclosure obligation under subsection (3)(A) is satisfied by providing clear and conspicuous prior disclosure and obtaining written acknowledgment and consent from the client. Written consent shall be obtained either—

1. At the establishment of the advisory relationship; or

2. Prior to—

A. Effecting the initial discretionary investment for the client's account;

B. Providing the initial recommendation or advice regarding the purchase or sale of a security or commodity in a client's account; or

C. Selecting, or recommending or advising on the selection of, a third-party manager or subadviser to manage the investments in a client's account;

3. Such disclosure, thereafter, shall be provided to the client on an annual basis and, no less than every three (3) years, consented in writing by the client; and

(D) Written consent required in subsection (3)(C) shall contain language that is substantially similar to the following:

"I, [NAME OF CLIENT], consent to my [as applicable, NAME OF INVESTMENT ADVISER OR INVESTMENT ADVISER REPRESENTATIVE] incorporating a social objective or other nonfinancial objective into any discretionary investment decision my [as applicable, INVESTMENT ADVISER OR INVESTMENT ADVISER REPRESENTATIVE] makes for my account; any recommendation or advice my [as applicable, INVESTMENT ADVISER OR INVESTMENT ADVISER REPRESENTATIVE] makes to me for the purchase or sale of a security or commodity; or the selection my [as applicable, INVESTMENT ADVISER OR INVESTMENT ADVISER REPRESENTATIVE] makes, or recommendation or advice my [as applicable, INVESTMENT ADVISER OR INVESTMENT ADVISER REPRESENTATIVE] makes to me regarding the selection of, a third-party manager or subadviser to manage the investments in my account. Also, I acknowledge and understand that incorporating a social objective or other nonfinancial objective into discretionary investment decisions, recommendations, advice, and/or the selection of a third-party manager or subadviser to manage the investments, in regards to my account, will result in investments and recommendations/advice that are not solely focused on maximizing a financial return for me or my account."

(4) The conduct set forth above is not inclusive. Engaging in other conduct such as nondisclosure or incomplete disclosure of material fact or other deceptive practices are dishonest or unethical business practices.

*AUTHORITY: section 409.6-605, RSMo 2016.\* Original rule filed April 8, 2004, effective Oct. 30, 2004. Amended: Filed March 31, 2008, effective Jan. 1, 2009. Amended: Filed July 19, 2019, effective Jan. 30, 2020. Amended: Filed Nov. 1, 2021, effective April 30, 2022. Amended: Filed Dec. 15, 2022, effective July 30, 2023.*

*\*Original authority: 409.6-605, RSMo 2003.*

Case 2:23-cv-04154-SRB   Document 121-1   Filed 10/02/23   Page 20 of 23



**15 CSR 30-51.173 Supervision Guidelines for Investment Advisers**

*PURPOSE: This rule provides guidance for reasonable supervision by investment advisers.*

(1) The following are factors considered by the commissioner to determine whether any firm with two (2) or more supervised persons has engaged in reasonable supervision. Whether—

(A) The firm has established current procedures and systems for supervising the activities of supervised persons that are reasonably designed to achieve compliance with applicable state and federal securities laws and regulations;

(B) The firm has established current procedures and systems that could reasonably be expected to allow a chief compliance officer reasonably discharging his/her supervisory duties under such established procedures to prevent and detect violations of the Act, and the firm regularly reviews these procedures and systems;

(C) The firm has reasonably implemented the procedures and systems referred to in subsections (A) and (B) above;

(D) The firm provides appropriate initial and periodic refresher training to supervised persons regarding the firm's procedures and systems and additional initial and periodic training to chief compliance officers in the procedures and systems referred to in subsections (A) and (B) above;

(E) The firm reasonably follows up on indications of wrongdoing, "red flags." Such red flags may consist of, but are not limited to, activities of unregistered individuals, outside business activities, making unsuitable recommendations, charging unreasonable advisory fees, misrepresenting the qualifications of the supervised person, improper use of a senior designation, garnishment of wages, regulatory actions, prior disciplinary history of one (1) or more customer complaints, and recent customer complaints;

(F) The firm has an adequate system to track and monitor the status of customer complaints;

(G) The firm has designated a chief compliance officer of the investment adviser;

(H) The designated supervisor is responsible for supervising no more supervised persons at any one (1) time than would allow the supervisor to effectively execute his supervisory duties. The appropriate number of supervised persons which one (1) person can reasonably supervise is dependent on the nature of the business conducted by the persons supervised, technical resources available to the supervisor, additional personnel available to assist the supervisor, and other resources made available to assist the supervisor;

(I) The firm conducts annual compliance examinations of supervisory locations with effective deficiency and follow-up procedures. Unannounced examinations may be reasonable if there are compliance issues concerning supervised persons or activities;

(J) The firm reasonably audits for compliance including reasonable follow-up and proof, independent of the supervised person, that mail is reviewed for customer complaints and other red flags; and

(K) The firm has a reasonable policy for disciplinary and progressive supervisory action, which is reasonably implemented.

*AUTHORITY: sections 409.4-412(d)(9) and 409.6-605, RSMo Supp. 2010.* Original rule filed April 8, 2004, effective Oct. 30, 2004. Amended: Filed Sept. 9, 2010, effective March 30, 2011.

*Original authority: 409.4-412, RSMo 2003 and 409.6-605, RSMo 2003.*

**15 CSR 30-51.175 Exclusion From Definition of Broker-Dealer**

*PURPOSE: The commissioner is authorized by the Missouri Securities Act of 2003 to create exceptions from the definition of broker-dealer. This rule excludes from the definition certain credit unions engaged in limited broker-dealer activities under a networking arrangement with a registered broker-dealer.*

(1) Networking Arrangements Between Broker-Dealers and Credit Unions. A credit union organized or chartered under the laws of the United States or under the laws of the state of Missouri, or that is organized or chartered under the laws of a state which has reciprocity with Missouri, is excluded from the definition of broker-dealer under section 409.1-102(4)(E), RSMo if such credit union's broker-dealer activities are limited to those authorized in a contractual or other written arrangement with a broker-dealer registered under the Missouri Securities Act of 2003 whereupon the broker-dealer offers brokerage services on or off the premises of the credit union and—

(A) Such broker-dealer is clearly identified as the person performing the brokerage services;

(B) The broker-dealer performs brokerage services in an area that is clearly marked and, to the extent practicable, physically separate from the routine deposit-taking activities of the credit union;

(C) Any materials used by the credit union to advertise or promote generally the availability of brokerage services under the arrangement clearly indicate that the brokerage services are being provided by the broker-dealer and not by the credit union;

(D) Any materials used by the credit union to advertise or promote generally the availability of brokerage services under the arrangement are in compliance with Missouri and federal securities laws before distribution;

(E) Employees of the credit union (other than agents of a broker-dealer who are registered under the Missouri Securities Act of 2003 and qualified pursuant to the rules of a self-regulatory organization) perform only clerical or ministerial functions in connection with brokerage transactions including scheduling appointments with the agents of a broker-dealer, except that employees of a credit union may forward customer funds or securities and may describe in general terms the types of investment vehicles available from the credit union and the broker-dealer under the arrangement;

(F) Employees of the credit union do not receive incentive compensation for any brokerage transaction unless such employees are agents of a broker-dealer, are registered under the Missouri Securities Act of 2003 and are qualified pursuant to the rules of a self-regulatory organization, except that the employees of the credit union may receive compensation for the referral of any customer if the compensation is a nominal one (1)-time cash fee of a fixed dollar amount and the payment of the fee is not contingent on whether the referral results in a transaction;

(G) Such services are provided by the broker-dealer on a basis in which all customers that receive any services are fully disclosed to the broker-dealer;

(H) The credit union does not carry a securities account of the customer; and

(I) The credit union or broker-dealer informs each customer that the brokerage services are provided by the broker-dealer and not by the credit union and that the securities are not



deposits or other obligations of the credit union, are not guaranteed by the credit union, and are not insured by the Federal Deposit Insurance Corporation or the National Credit Union Administration.

*AUTHORITY: sections 409.1-102(4) and 409.6-605, RSMo Supp. 2003.\* Original rule filed Feb. 13, 2004, effective July 30, 2004.*

*\*Original authority: 409.1-102, RSMo 2003 and 409.6-605, RSMo 2003.*

**15 CSR 30-51.180 Exemptions from Registration for Broker-Dealers, Agents, Investment Advisers, and Investment Adviser Representatives**

*PURPOSE: This rule prescribes exemptions from registration for broker-dealers, agents, investment advisers, and investment adviser representatives.*

(1) Canadian Limited Registration Exemption.
(A) Broker-Dealer Exemption. A broker-dealer that is registered in Canada and who has no office or other physical presence in this state is exempted from broker-dealer registration pursuant to section 409.4-401(d), RSMo, provided it complies with the following conditions:
1. Registered with or is a member of a self-regulatory organization in Canada, stock exchange in Canada, or the *Bureau des services financiers*;
2. Maintains in good standing its provincial or territorial registration and its registration with or membership in a self-regulatory organization in Canada, stock exchange in Canada, or the *Bureau des services financiers*; and
3. Effects or attempts to effect transactions in securities –
A. With or for a person from Canada who is temporarily present in this state, with whom the Canadian broker-dealer had a bona fide broker-dealer-client relationship before the person entered the United States; or
B. With or for a person from Canada who is present in this state, whose transactions are in Canadian self-directed tax advantaged retirement account of which the person is the holder or contributor.
(B) Agent Exemption. An agent who represents a Canadian broker-dealer that is exempt under this rule is exempt from agent registration under section 409.4-402, RSMo.

(2) Exemption from Agent Registration for Agricultural Cooperative Agents. An individual who represents an agricultural cooperative and who effects or attempts to effect transactions in the cooperative's securities exempted under 15 CSR 30-54.195 is exempt from registering as an issuer agent under section 409.4-402, RSMo, provided the following conditions are met:
(A) The individual is currently employed in the capacity of store or plant manager by the issuer agricultural cooperative or an agricultural cooperative that is a member of the issuer agricultural cooperative;
(B) The individual's name and address has been properly submitted by the agricultural cooperative in the most recent notice filing under 15 CSR 30-54.195(2)(A); and
(C) General solicitation is not made in connection with the offer to sell or sale of the securities.

(3) Exemption from Investment Adviser Registration for Broker-Dealers with Investment Adviser Capacity.
(A) A broker-dealer registered under section 409.4-401, RSMo, that transacts business in this state as an investment adviser

is exempt from registering as an investment adviser under section 409.4-403, RSMo, provided that the broker-dealer complies with the following conditions:
1. The broker-dealer must control and supervise all investment advisory activities of the investment adviser representatives; and
2. The broker-dealer must comply with the notice filing requirement set forth in 15 CSR 30-51.020(1)(C).

(4) Exemption from Investment Adviser Representative Registration for Broker-Dealer Agents. A broker-dealer agent registered under section 409.4-402, RSMo, that transacts business in this state as an investment adviser representative is exempt from registering as an investment adviser representative under section 409.4-404, RSMo, provided that the investment adviser representative is under the control and supervision of the registered broker-dealer.

(5) Exemption from Investment Adviser Representative Registration for Solicitors. A person who is paid a solicitor fee pursuant to 15 CSR 30-51.145(1) is exempt from registering as an investment adviser representative.

(6) Exemption for Investment Advisers to Private Funds.
(A) Definitions. For purposes of this regulation, the following definitions shall apply:
1. "Private fund adviser" means an investment adviser who provides investment advice solely to one (1) or more qualifying private funds;
2. "Qualifying private fund" means a private fund that meets the definition of a qualifying private fund in U.S. Securities and Exchange Commission (SEC) Rule 203(m)-1, 17 *Code of Federal Regulations* (CFR) 275.203(m)-1;
3. "3(c)(1) fund" means a qualifying private fund that is eligible for the exclusion from the definition of an investment company under Section 3(c)(1) of the Investment Company Act of 1940, 15 U.S.C. 80a-3(c)(1); and
4. "Venture capital fund" means a private fund that meets the definition of a venture capital fund in SEC Rule 203(l)-1, 17 CFR 275.203(l)-1.
(B) A private fund adviser is exempt from registering as an investment adviser under section 409.4-403, RSMo, if –
1. Neither the private fund adviser nor any of its advisory affiliates are subject to a disqualification as described in Rule 262 of SEC Regulation A, 17 CFR 230.262;
2. The private fund adviser files with the commissioner each report and amendment thereto that an exempt reporting adviser is required to file with the SEC pursuant to SEC Rule 204-4, 17 CFR 275.204-4; and
3. In the event the private fund adviser advises at least one (1) 3(c)(1) fund that is not a venture capital fund, then the private fund adviser also –
A. Reasonably believes that those 3(c)(1) funds (other than venture capital funds) are beneficially owned by persons that qualify as either –
(I) An "accredited investor" as defined by 17 CFR 230.501(a)(1), (2), (3), (4), (5), (7), or (8). For purposes of this section, an "accredited investor" under 17 CFR 230.501(a)(8) excludes any entity which has an equity owner that only qualifies as an accredited investor under 17 CFR 230.501(a)(6); or
(II) A "qualified client" as defined by 17 CFR 275.205-3(d)(1)(iii);
B. Discloses to each beneficial owner of a 3(c)(1) fund in writing and at the time of purchase the following:
(I) All services, if any, to be provided to individual

beneficial owners;

(II) All duties, if any, the investment adviser owes to the beneficial owners; and

(III) Any other material information affecting the rights or responsibilities of the beneficial owners; and

C. Delivers or causes to be delivered annually to each beneficial owner of the fund financial statements of each 3(c)(1) fund that is not a venture capital fund.

(C) The report filings described in paragraph (6)(B)2. above shall be made electronically through the Investment Advisor Registration Depository (IARD). For purposes of this section, a report is filed when the report is accepted by the IARD on the state's behalf.

(D) The above notwithstanding, a private fund adviser includes an investment adviser that−

1. Before the effective date of this rule, was exempt from registration in reliance on 15 CSR 30-51.180(6);

2. Advises a fund that−

A. The private fund adviser advised before the effective date of this rule;

B. Has one (1) or more owners who, before the effective date of this rule, the private fund adviser reasonably believed qualified as an "accredited investor" as defined by 17 CFR 230.501(a)(6); and

C. After the effective date of this rule, only sells its securities to persons who qualify as either−

(I) An "accredited investor" as defined by 17 CFR 230.501(a)(1), (2), (3), (4), (5), (7), or (8). For purposes of this section, an "accredited investor" under 17 CFR 230.501(a)(8) excludes any entity which has an equity owner that only qualifies as an accredited investor under 17 CFR 230.501(a)(6); or

(II) A "qualified client" as defined by 17 CFR 275.205-3(d)(1)(iii); and

3. Otherwise complies with the requirements of this rule.

*AUTHORITY: sections 409.4-401(d), 409.4-402(b)(9), 409.4-403(b)(3), 409.4-404(b)(2), and 409.6-605, RSMo Supp. 2011.\* Original rule filed Dec. 28, 2001, effective July 30, 2002. Emergency amendment filed Aug. 27, 2003, effective Sept. 12, 2003, expired March 9, 2004. Amended: Filed Aug. 28, 2003, effective Feb. 29, 2004. Amended: Filed May 26, 2004, effective Nov. 30, 2004. Emergency amendment filed Feb. 2, 2007, effective Feb. 12, 2007, terminated March 5, 2007. Emergency amendment filed Feb. 23, 2007, effective March 5, 2007, expired Aug. 10, 2007. Amended: Filed Feb. 2, 2007, effective July 30, 2007. Amended: Filed April 26, 2012, effective Oct. 30, 2012.*

*\*Original authority: 409.4-401, RSMo 2003; 409.4-402, RSMo 2003; 409.4-403, RSMo 2003; 409.4-404, RSMo 2003; 409.6-605, RSMo 2003.*